PER CURIAM.
Roberto Faith, the former husband, appeals the trial court’s order granting former wife Isabel Faith’s motion to compel the immediate transfer of certain funds. We reverse.
The former husband and former wife arrived at a property settlement agreement during mediation. The agreement provided, in part, that the former husband was to use his best efforts to complete the purchase of a specific warehouse complex within ninety *601 days. The agreement provided that “[i]f despite all his best efforts and through no fault of his own, the transaction shall not be closed, then the parties’ marital settlement agreement shall be subject to renegotiation.”
When the former husband entered into negotiations for the warehouse complex, the seller requested a higher price and different terms than previously announced. The warehouse complex was to be sold subject to the existing leases.
The seller provided the former husband with the existing leases, and the former husband presented the entire package to his certified public accounting firm and property management expert for evaluation. After analysis, the certified public accounting firm concluded that the projected rate of return from the warehouse transaction would be 3.8 percent, substantially below the customary rate of return, in the vicinity of 12 percent, for a transaction of this nature. Both the certified public accounting firm and the property management firm recommended that the former husband abandon the transaction because of its economic undesirability. This testimony was unimpeached and uncontra-dicted in the hearing below.
At a hearing on motion to enforce the property settlement agreement (which had been incorporated in the final judgment of dissolution of marriage), the trial court took the position that the economic terms of the real estate transaction were immaterial, since it was the former husband’s voluntary decision to abandon the transaction. The trial court ruled that since the former husband had voluntarily abandoned the transaction, it followed that he had not used his best efforts.
We must respectfully disagree with the trial court’s position. It is apparent that the parties regarded the closing of the warehouse transaction as a major contingency in the parties’ property settlement agreement. It is also evident that the property settlement agreement rested on the assumption that the warehouse transaction would be con-eluded at a favorable rate of return, thus providing the former husband with the financial wherewithal to carry out the terms of the property settlement agreement. The analysis done by the independent certified public accounting firm and the property management firm indicated that the transaction did not make economic sense. This analysis was not contradicted in the proceedings below, nor was there any suggestion that the economic analysis was anything other than an independent evaluation by qualified professionals.
Under the circumstances, the husband was not obliged to proceed with the transaction. That being so, we conclude that the contingency in the marital settlement agreement has occurred, and that the marital settlement agreement must be renegotiated.
In the meantime, the trial court has full authority to enter whatever orders may be needed for the temporary support of the former wife. If, of course, the parties do not succeed in a successful renegotiation, then the issues of support * and property division shall be presented to the trial court for resolution.
Reversed and remanded for further proceedings consistent herewith.

 In the negotiated property settlement agreement, the former wife waived alimony in exchange for an immediate distribution of certain property as well as payments pursuant to a secured note which, in substance, would pay the former wife her equitable distribution over a period of years. Since the property settlement agreement is subject to renegotiation, the former wife is, of course, not bound by her previous waiver of support.